73 F.3d 356
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Sharon Jameson BENNETT, Plaintiff-Appellant,
v.
FEDERAL PAPER BOARD COMPANY, INCORPORATED, Defendant-Appellee.
 No. 94-2151.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 30, 1995.
Decided Dec. 21, 1995.
 
 ARGUED: William Robert Fewell, Jr., Wilmington, North Carolina, for Appellant. Clinton Stephen Morse, WOODS, ROGERS & HAZLEGROVE, P.L.C., Roanoke, Virginia, for Appellee. ON BRIEF: Thomas M. Winn, III, WOODS, ROGERS & HAZLEGROVE, P.L.C., Roanoke, Virginia, for Appellee.
 Before MURNAGHAN, HAMILTON, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The district court dismissed Sharon Jameson Bennett's Title VII action against her former employer, Federal Paper Board Co., finding it time-barred. Bennett moved for reconsideration and the district court denied that motion. Finding no error, we affirm.
 
 I.
 
 2
 On February 10, 1992, Bennett filed a charge with the Raleigh, North Carolina office of the EEOC, alleging sex discrimination by her former employer, Federal Paper Board Co. The EEOC investigated her claim, but found no evidence of discrimination. On November 7, 1992, the EEOC notified Bennett by telephone that it would issue a no cause determination in her case if she failed to provide evidence in support of her claim by November 9, 1992. Receiving no response from Bennett by that date, the EEOC did, in fact, on November 9, send Bennett by certified mail a right-to-sue letter. A copy was also sent to Federal Paper Board Co. on that date. The letter explained that the EEOC had dismissed Bennett's case, and informed her that her only remaining recourse was to file suit in the federal district court within ninety days, after which time, her right to sue would be lost.
 
 
 3
 The letter was received by Federal Paper Board Co. on November 10, 1992. A Postal Service manager stated in an affidavit submitted by the employer that, as one "thoroughly familiar with U.S. Postal Service protocol for certified mail as well as local Practice" of the Wilmington, North Carolina post office branch, certain markings on the envelope containing Bennett's copy of the right-to-sue letter indicated a "postal worker attempted to deliver" it to Bennett on November 10, but, finding no one at home, instead left a notice instructing Bennett to retrieve the letter at the Post Office. Bennett denied that she had received this November 10 notice from the Postal Service, but it is undisputed that on November 11, 1992, Bennett wrote a letter to the EEOC investigator, requesting leave to amend her complaint. In that letter, Bennett indicated that she was aware of the EEOC's no cause determination, despite the fact that she had not yet picked up the right-to-sue letter. See J.A. 60 ("With regard to your opinion that there is no discrimination in my case ...").
 
 
 4
 By November 26, 1992, Bennett had still failed to retrieve the certified letter from the post office, and the Postal Service delivered a "Final Notice" to her home, which stated that the letter would be returned to its sender if not claimed by December 12, 1992. Bennett acknowledged during her deposition that by December 7 she had received this notice. Bennett finally claimed the right-to-sue letter on December 8, 1992.
 
 
 5
 Ninety days later, on March 8, 1993, she filed this action asserting that the Federal Paper Board Company had violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Secs. 2000e to 2000e17, by discriminating against her on the basis of sex. The district court dismissed the action with prejudice as untimely.
 
 II.
 
 6
 After the EEOC gives notice of the right to sue, Title VII plaintiffs have ninety days in which to file suit in federal court. 42 U.S.C. Sec. 2000e-5(f)(1)(1988). The parties agree that Bennett's complaint was timely filed if the "clock did not start running" until December 8, 1992 when she actually received the right-to-sue letter.
 
 
 7
 Bennett's argument focuses entirely on the fact that she did not actually receive the right-to-sue letter until December 8, 1992. This reliance on the date of actual receipt is misplaced in light of established Fourth Circuit precedent. In Harvey v. City of New Bern Police Dept., 813 F.2d 652 (4th Cir.1987), we expressly rejected the "actual receipt" rule Bennett urges we follow. Instead, we adopted a more flexible rule that "requires a case-by-case examination to determine if an equitable tolling of the filing period is appropriate." Id. at 654. This approach is consistent with Congress' evident intent "to require [Title VII] claimants to act expeditiously, without unnecessary delay." Id. Any question about the applicability of the Harvey rule to the certified mail context was resolved by our decision in Watts-Means v. Prince George's Family Crisis Center, 7 F.3d 40, 42 (4th Cir.1993), in which we clearly stated that "the limitations period is triggered when the Postal Service delivers notice to a plaintiff that the right-to-sue letter is available for pickup, and not when the letter is actually picked up." Thus, in order for Bennett to prevail, we must be persuaded that "reasonable grounds exist for an equitable tolling of the filing period." Harvey, 813 F.2d at 654. See also Watts-Means, 7 F.3d at 42.
 
 
 8
 In Watts-Means, we concluded that equitable tolling of the filing period was not warranted because Watts-Means "suspected" that the letter referred to by a postal notice was from the EEOC. 7 F.3d at 42. To hold otherwise, we concluded, would be contrary to Congress' intent in imposing a time limit for filing Title VII claims; "[i]f the limitations period was [tolled] until she picked up the letter, she conceivably could have tolled the period for as long as she chose simply by not picking up the letter." Id. at 42 n. 1. For the same reason, equitable tolling is not appropriate in the instant case. Bennett knew that the EEOC planned to issue a no cause determination on November 9 unless she submitted additional evidence prior to that date. Because she failed to provide such evidence, she had ample reason to know or "suspect" that the certified letter that the Postal Service attempted to deliver after November 9 was from the EEOC. Her November 11 letter to the agency, expressing her disagreement with the no cause determination, further supports the conclusion that she suspected that the certified letter was from the EEOC. Under these circumstances, there are simply no reasonable grounds for an equitable tolling of the filing period.
 
 
 9
 The district court correctly dismissed Bennett's claim as untimely filed. We reiterate our holdings in Watts-Means and Harvey that delivery (or attempted delivery) of a right-to-sue letter to a claimant's home, not actual receipt of that letter by the claimant, triggers the commencement of the ninety day filing period. As this case presents no facts justifying equitable tolling of the filing period, the district court's dismissal of Bennett's case, with prejudice, is
 
 
 10
 AFFIRMED.